Good morning, Your Honors. May it please the Court, my name is Maurice Surratt and I'm representing the appellant defendant in this criminal matter, Delante Lunn. I would like to reserve five minutes for rebuttal. Mr. Lunn's appealing his jury conviction to counts one and two of the indictment, which is regarding a death enhancement for a sale of narcotics, that being fentanyl and heroin in this case. Mr. Lunn was facing a mandatory minimum 20-year sentence of imprisonment and ultimately was sentenced to 300 months imprisonment by Judge Nugent in the Northern District of Ohio. Here, one of the major issues is whether or not the government proved beyond a reasonable doubt that Mr. Lunn actually caused the death of this individual, based upon the mixed drug overdose in this case. It was unreviewed testimony that Mr. Lunn had absolutely no involvement with the alzepram that was found in the decedent's femoral blood. And all the testimony from both toxicology, as well as the coroner, as well as the defendant's expert, state that this was a mixed drug overdose of alzepram, heroin, and fentanyl. When considering the congressional intent of the 924C Clause, it's to provide drug dealers notice that if you sell drugs, which then kills someone, you're subject to these harsh mandatory minimum sentences of imprisonment. But in this case, there's a lot of factual and legal discrepancies regarding the amounts of drugs in the femoral blood, as well as what drugs may or may not have been ingested by the decedent. The alleged sale of this case took place on February 18, 2016, at 7 p.m. Excuse me if I might interrupt. I'm trying to figure out exactly what you're appealing from count number one. In your brief, I think you say it, page 25, that you're appealing 25 of your brief that trial counsel, in closing argument, conceded that the mixture of fentanyl and heroin was distributed by your client. And so what you're appealing is the causation of that. So the first, I think you say, the operative facts of count one, you're not appealing them. Am I correct on that? We are still appealing as a basis with more of an emphasis on the but for cause as to the causation element. Because at closing argument, counsel had to deal with evidence that was admitted, and that's what we argue in the other arguments regarding... I don't see any argument anywhere in your brief that your client did not distribute that mixture of fentanyl and heroin to the victim. Whether or not a substance was distributed by Mr. Lunn, I don't think that's necessarily the argument. It's what substance, in fact, was distributed because no one witnessed the hand-to-hand transaction. No one actually saw the deceased woman ingest the drugs. There were other drugs that were found in her room, including a separate dose of heroin, which have not been linked to Mr. Lunn, as well as the Xanax that was also not linked to Mr. Lunn. So with regards to... The answer is I don't know whether I appealed it or not. I don't know. I mean, it is kind of important to some of your other issues. Yes. And with that, we did appeal the whether or not the government had sufficient evidence to prove that Mr. Lunn was the one that distributed the fatal dose... Don't say that in your assignment of error at all. You say there's insufficient evidence to prove causation. That's different. Based upon the evidence that ended up coming in, that's what the trial counsel was stuck arguing for the most part to the jury at the end in closing arguments. So in this case... What's the point you're pressing now? Are you pressing an instruction point or a sufficiency point? Strongly is the sufficiency because of the... If it's a sufficiency, what about the coroner, Dr. Frank Miller? Now is it fair to say that based upon your opinion that but for the use of the fentanyl and heroin, that Dallar's death would not have occurred? That is my opinion. Yes. And then that was further clarified that it was all three drugs that caused the death of this individual. There was no autopsy performed in this case, which to sentence someone to 25 years on causing someone's death without an autopsy, I think causes a grave concern for the government in this case because... People have religious objections to autopsies. I don't understand that. Well, in this... There's a rule that says you have to have an autopsy before you get the enhancement. No, but in this case, the fentanyl level was 3.3 nanograms per milliliter. And there was testimony from both Dr. Frank Miller as well as the toxicologist that the therapeutic range for fentanyl is one to three, which means that 3.3 on its face alone was not what caused or could have caused but could have not caused the decedent's death in this case, along with the heroin in her system and the Xanax in her system. All three factors in this case were contributing factors. Counselor, let me ask you, isn't this, whether this Branch v. United States case of the Supreme Court from 2014 might be against your argument that this language in that case, the sentence seems to say that if there are several drugs or a combination of drugs that contributed to the death, there doesn't have to be a single cause or a single drug when we decide whether there's a but-for cause for the death. I'm just wondering whether in light of that language and barrage, your argument might be undercut a bit. Well, with the language in that court, in that case regarding the mixed drug overdose, there was other things that weren't considered by the court. And in this case, the Xanax played an essential role is what we are arguing based on the testimony that this deceased woman had a history of snorting the Alzheimer's. And the snorting, and there was testimony from the medical experts stating that snorting of Alzheimer's can cause respiratory failure. And with Mr. Lund not being caused with distributing that or charged with distributing that, that causes a great concern on the sufficiency of the evidence to convict him of this 20 year mandatory minimum enhancement. She could have, because of the great time gap between when the distribution occurred at approximately 7 to 8 p.m. and her time of death at 10 a.m. and the fact that heroin that was not attributed to Mr. Lund was found in her room and heroin was also found in her system as well as the Xanax that was found in her room that was not attributed to Mr. Lund. Whether or not the government proved beyond a reasonable doubt that Mr. Lund distributed the drugs that actually caused her death is the crux of the argument here. Because without the mixed drug overdose, this is not a situation where a dose of fentanyl was sold and then a deceased person ingested the fentanyl and obviously passed away and there can be that causal link. These cases become a lot more complicated when there's a mixed drug overdose, especially given the 3.3 nanograms per milliliter. In other cases, such as in Ewing, the victim had 16.8 nanograms per milliliter. That's clearly an independent fatal dose of fentanyl. So you're saying, I'm confused. The coroner's, Deputy Coroner says it was caused by a dose of heroin and fentanyl. And Alzapram. He doesn't say that. He states all three were the cause of death. That was the official cause of death on the coroner's report as well as the testimony that all three were the cause of the death. Is it fair to say that based upon your opinion, that but for the use of fentanyl and heroin, that Shani Dollar's death would not have occurred? That's my opinion. So in other words, the combination of fentanyl and heroin is what caused her to die. That is my opinion. It's in ID 693. You don't like to quote that. I understand that. But he said it. Yes. And it was further clarified throughout all of the testimony of Dr. Frank Miller that it was a combination of all three drugs that caused the overdose. That the Alzapram did play a... I think I'm just missing something, but I have a little bit of a so what. I thought you could have but for because of the incremental impact of the bad drug. In other words, the incriminating drug. I thought that was the point. That's why I was asking jury instruction versus sufficiency. And you're focused on sufficiency, and it seems to me you can have but for the incriminating drug. The opinion is no death. So I don't know why it helps you to keep going back to the three drugs, and all three played a role. That doesn't eliminate the but for. You can have more than one but for. That's the real point. Well, and in this case, that's why the objection was made to the without the incremental effect of the drugs, would her death have been caused. And there was testimony that the victim was nodding out even the night before with on other drugs. So I just want to make sure I'm getting your argument. Doesn't that prove this is a jury instruction debate, not a sufficiency debate? It's both. That's why our first assignment of error is regarding the jury instruction. But if the jury instruction is legit, you have to lose. Because there is evidence that this had the incremental effect of killing the individual. So that's what I'm trying to get. It seems to me it's all jury instruction or it's nothing. That's why in this case, I think what's so unique about it is the alzheimer's and the fact that she was snorting it and the fact that these drugs, based on the levels of heroin and fentanyl in her system, she could have survived based on her tolerance to that. Thank you. Good morning, your honors. May it please the court. My name is Laura Ford and I'm here on behalf of the United States. The evidence in this case was more than sufficient to show that defendant one distributed the drugs that resulted in the victim's death. The instructions in this case for but-for causation were consistent with the Supreme Court's decision in Barrage. The incremental effect language was a theory that the Supreme Court specifically accepted in that opinion. It's equivalent to saying that the combined effect of the substances at issue had to have caused the victim's death. Or in other words, without that combined effect, the victim would have lived. To convict under the instructions that were provided, the jury had to have found that the victim's death would not have occurred without the victim using the substances that Lund distributed, either alone independently or in combination with other factors. Is there evidence that from the coroner that the combination of the three as opposed to the two did the trick? Yes, but to the extent of the combination, I would say that the benzodiazepines, the coroner testified that those independently do not have a potential for being a toxic substance. In this case, they were within a low therapeutic range and independently there was not a lot of lethal potential for that. Specifically, although Lund argues that the benzodiazepines could have been a but-for cause instead, I think the testimony shows that the benzodiazepines played a non-essential contributing role in the victim's death because he specifically testified that but-for the use of fentanyl and heroin, the victim would not have died. I would suggest actually that these substances were the independent cause of her death. She had 3.3 nanograms per milliliter in her blood and the toxicologist testified that it's known in the scientific community that 3 nanograms is considered a fatal dose. He's seen overdoses at 1 to 2 nanograms. Miller, the coroner testified that he's seen overdoses at 2 to 3, so she's over that amount. I think also significant in this case is that she was a recovering heroin addict and she had been clean for a number of months and Miller specifically acknowledged that she was a recovering addict and that there is a significantly higher risk of overdose when you return those first two weeks of returning to use because you can't use the same amount. Your liver is not used to processing that drug anymore and you're at a high risk of overdose in this case. I think also critical... Where does this incremental effect and combination go? In other words, you know, you have six or seven substances and only one of them is illegal. Can you really have a coroner get up there and say the combination of the seven substances caused the death, one of them was illegal? Can you do that? Doesn't that stop at some point? Well I think what you have to show and I guess in the Supreme Court's words that the substances at issue were the incremental effect drugs that, so to speak, broke the camel's back and that's what we have in this case. That fentanyl by far was the strongest substance. That's exactly the language Justice Scalia uses in Barrage, so it's very good language for you to quote, but I just can't believe it applies when there's six, seven, eight potential causes. You just get someone to say, we're going to decide that one was the straw that broke the camel's back. In a mixed drug case, which is what we have, I think you can still have an independent or but-for causation when you have drugs that in isolation would be enough to cause death. So even though you have, for instance in this case, the benzodiazepines, independently that doesn't have a lot of lethal potential in this case. And it was the heroin and fentanyl that controlled the result in this case based on the significant amounts. And notably the victim texts Lunn after she receives the substance from him and says, that was H, right? And he says yes. She believes it's heroin that she's taking. Miller testified that if somebody believes that they're taking heroin, that they have fentanyl and they use it as heroin, you only need one one-hundredth to produce the effects of heroin. So if you're taking it as heroin, he said that there's an overwhelming toxicological overdose. And that's at page 696 to 97. But I would suggest to the court that his testimony that the victim, that her death would not have occurred without the fentanyl and heroin in this case per se meets the but-for causation standard that was established by the Barrage opinion. And there was overwhelming evidence that it was Lunn who was responsible for distributing these substances. There's testimony from her roommates that she was meeting Gus, who was identified as Lunn a couple days before her death, that she was meeting him for drinks. She tells her stepsister the night before that she met with Gus and that he'd gotten her high. She texts him the night before and says, can you hook me up in a bit? And he says yes. Where are you at? She says, I'm at home. I'm waiting for Bree, which is her stepsister, Brianna Robertson. She picks her up. She meets with Lunn and obtains a grayish substance. It's in a plastic baggie. She returns home and texts Lunn, and that's when she has the Facebook message. That was H, and he confirms that it was. And she's found dead the next morning, approximately noon actually. And she, there was no evidence that she went anywhere else. And also indicative of his guilt is that in Robertson's description, he was completely freaking out and panicking. He defriends the victim on Facebook two hours after she died. He's deactivating and reactivating his Facebook account 19 times. He gets a new phone number within a couple days and tells her stepsister to delete all calls and texts from the last number, and he's repeatedly asking her, what have you heard? All that is highly indicative of his guilt in this case. Unless this court has further questions, I'll move on to the 404B issue. The court in this case permitted the government to introduce evidence that the defendant distributed heroin to a confidential informant approximately two months after the victim's death. I've seen a lot of 404B cases where the similar acts stuff is later. It's unusual in this case. My instinct is it seems more problematic. I'm not sure I can figure out why. Well, in this case, it was highly probative of the defendant's identity in this case. There were two, there was a, as my colleague noted, that there was another substance, heroin, a rock-like substance that was found in a drawer next to the victim's body in his nightstand. There also was this open bag of the heroin-fentanyl mix. That mix was what was consistent with what matched the lab tests in this case. So it was imperative for the government to show that it was Lund who was responsible for distributing that mixture to the victim in this case. And he denied that. It was somebody else according to him. Not only that, in a recorded call with the victim's stepsister, he's telling her to stick to her story and he suggests that they, police, are trying to plant something on me. And that squarely placed his identity at issue. This court has previously affirmed the admission of other acts testimony to show identity in a case where a defendant has claimed that police have planned to crack cocaine at the scene of the crime. That was the 2010 Allen case that the government cited in its brief. Help me if you will. The 404B, I think the defendant argues, was prejudicial. I'd like to know where the prejudice goes, your view of it. If the first part, the distribution, is not at issue in this appeal, if I'm right in that, where is the prejudice when the only thing in the case is whether or not the expert testimony supports causation? That's kind of a legal question, maybe a mixed question of fact and law. I'm not understanding the argument. Where's the prejudice? You don't mention that. We're being asked to reverse the case on this 404B. I'd like to know why. Well I would say there was no prejudice at all in this case. I mean, ultimately, Lund- Well there would be, wouldn't there? If he's a career, if the evidence is this guy is a career dope peddler and there is an issue of whether or not he distributed, whether he was a dope peddler in this instance, I would think that could be prejudicial. I would say it more went to his identity, but he essentially conceded at the end, not based on this controlled by, but based on his own communication on Facebook that he had distributed heroin to the victim. That by far was more prejudicial than this evidence. It wasn't based on this limited testimony and I would emphasize that this was very limited in durations and scope. It spanned approximately 22 minutes of the testimony. It was on the third day of trial. And so I think that- Well I'm certain that opposing counsel can help me out on the rebuttal. Thank you. Alternatively, your honors, the evidence also was permitted to show Lund's knowledge in this case because he denied that he knew anything about heroin, that he didn't mess with that stuff. He said that repeatedly during recorded calls with the victim's sister and he denied having anything to do with the victim and then ultimately admitted that well maybe he met her at a bar once and then oh well maybe we did meet the night before she died, but you didn't see me put anything in her hand. For those reasons, the court properly found that admitting the testimony of the controlled by was permissible to show identity and knowledge and that the potential for prejudice was very low. It was not outweighed by the probative value, particularly given the other prejudicial evidence and again I think the most prejudicial evidence against him was his own communications and his behavior, his behavior. Lund argues that he was prejudiced because the detective testified that the confidential informant reported that Lund was being paranoid. First of all, defense counsel objected to that statement. The court sustained it, but beyond that the fact that he was being paranoid was a given. It was already part of the evidence. It was independently admissible based on his conduct with defriending the victim, deactivating his Facebook account, getting a new number. That was all in the evidence and it was properly admitted. And unless this court has further questions at this time, the government respectfully requests that this court affirm Lund's convictions and his enhanced sentence for the death that resulted from his conduct in this case. Alright, thank you. Thank you. Thank you. And to follow up regarding the quote that on page ID 693 regarding that is my opinion, so in other words the combination of fentanyl and heroin is what caused Sinead Dallard to die, which is what I was asked about and the witness, Dr. Miller, stated that's my opinion. It then continues on to page ID 694, which it says, does the fact that heroin and fentanyl is found in the substance on the nightstand, how does that affect your guess, how does that affect your, I guess, analysis of how Ms. Dallard died? Well, she died of all three drugs we've discussed. Two of those drugs were the only source of fentanyl and the drugs on top of the nightstand. So even as questioned when pulling out that piecemeal, it is a combination of all three drugs that caused the deceased to die in this case, the alzapram could have been the straw that broke the camel's back. I just don't understand why that doesn't account for this argument. What am I missing? Because in this case, the alzapram could have been the straw that broke the camel's back. Because of the levels, she could have survived with the heroin and fentanyl alone in her system. But if he says the combination of all three did the trick, that proves all three were back-breaking sticks. But the defendant did not distribute the alzapram. No, I know, but it doesn't matter. If all three are back-breaking sticks, I don't understand why that doesn't squarely satisfy Barrage. Because the victim could have survived, potentially, on just the amount of fentanyl and heroin in her system. So it's not an independent, that's the problem with the mixed drug overdose in this case, is that had she survived, or had the heroin on her nightstand been the heroin that also contributed to her death, which was not distributed by the defendant. I don't know how the supposed clarifying statement detracts from the earlier statement that these two did the trick. That... You're trying to say the later statement is denying that. I think all the later statement is saying, yeah, okay, fine, that may have had an effect, too. I think the later statement just clarifies the exact question that was asked, which was that all three caused. I don't want to say clarify, you want to say denies the reality of what he said. I don't think the best way to reconcile them is, okay, maybe that was another one. But these two by themselves would have done the trick, and that satisfies Barrage. Well, and the problem there is that they could have, it's not that they did. And the testimony was that, from the doctor, was that they could have, but not that they did, which was the issue with the quantities. Like I stated in Ewing, the levels were off the charts, 16.8 nanograms per milliliters. That is a fatal dose. Here, the levels were so close that at 3 being the top of the therapeutic range, 3.3 is a survivable dose, based on the person's own tolerance and the medical history of that person. And in this case, they also, the doctor further goes on to say that the autopsy wasn't performed because of a medical objection or a religious objection. It was just due to a fiscal responsibility because of the amount of overdose deaths that the Northern District of Ohio, as well as many other communities, have been facing. But due to this fiscal responsibility, Mr. Lund is serving 25 years in prison when an autopsy could have clarified this one way or another as to potential other causes or contributing factors or other straws that may have broke the camel's back in this sort of situation, which the doctors do testify there could have been an underlying heart condition or medical condition that was, because this was not technically, potentially an independent fatal dose, that there could have been other things that contributed to this individual's death. And while this death is tragic, to enhance someone to a 20-year minimum sentence and ultimately impose a 25-year sentence based on all these unanswered questions is a very difficult thing for a jury and proof beyond a reasonable doubt that Mr. Lund caused this individual's death. And going on further to some of the other arguments that were brought up by my counsel, I guess due to time limits, I would just refer to what's in my brief and state that at this point we are respectfully requesting that the death enhancement be overturned based upon the case law that was submitted. In addition, we would also ask that the case be remanded to the district court, potentially for a new trial based on this 404B evidence that was submitted, including the video of the controlled by that the defendant admitted to. He pled guilty to these counts. Why did the video need to be played to the jury other than to prove that he's a drug dealer? Once a drug dealer, always a drug dealer. That impact that has on a jury is so strong. And in this case, the controlled by, the person it was done with, he's also deceased. So he couldn't come in and testify, which is why all the hearsay evidence also came into the jury. Mr. Lund pled guilty and accepted responsibility for that. So we would ask once again that this honorable court reverse and either reverse without the death enhancement or remand this case for a new trial. Thank you. Thank you very much. The case is submitted. Ms. Durratt, I see that you were appointed under the Criminal Justice Act, so the court would like to thank you for accepting that appointment and assisting the administration of justice on behalf of the court. So thank you. Thank you, Your Honors.